[Cite as *State v. Irvin*, 2025-Ohio-2848.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO/
CITY OF AKRON

    Appellee

    v.

ANTHONY IRVIN

    Appellant

C.A. No.     31170

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.     24CRB03558

DECISION AND JOURNAL ENTRY

Dated: August 13, 2025

HENSAL, Judge.

**{¶1}** Anthony Irvin appeals his conviction for disorderly conduct by the Akron Municipal Court. For the following reasons, this Court affirms.

I.

**{¶2}** Around 7:00 a.m. on a Saturday morning, Akron police officers Hughes and McDowell responded to a call about a fight outside a residence. When Officer Hughes arrived, he began speaking with the woman who had made the call and learned that one of the men involved in the fight was inside her house and the other was a couple of houses down on the opposite side of the street. When the officers spotted the second man, Mr. Irvin, approaching, Officer McDowell walked over to talk to him. Around that time, a truck came down the street and Mr. Irvin began arguing with the driver of the truck as it slowed to a stop. Mr. Irvin walked over to the truck and continued arguing with the driver through its open window but was pushed back by Officer McDowell. The driver of the truck got out of its passenger side, walked around the back, and

challenged Mr. Irvin to a fight. Mr. Irvin also walked to the back of the truck and continued arguing with the driver, getting close to him. Officer McDowell warned the men that he would use a Taser on one of them if they continued. By this point, the other man who had been involved in the initial fight and others from that house had come outside and began shouting back and forth with Mr. Irvin.

{¶3} Officer McDowell physically directed Mr. Irvin across the street, but Mr. Irvin kept arguing with the man from the truck and the others from the house. Officer McDowell asked Mr. Irvin to sit on a utility box and tell him what had happened, but Mr. Irvin kept standing up and yelling. Mr. Irvin challenged the driver of the truck to a fight at the jail, and when the driver said they could just do it there, Mr. Irvin asked the officer for permission to do so. Mr. Irvin continued ignoring Officer McDowell's directions to sit down and kept trying to go back across the street before being stopped by the officer. He also continued arguing with the other group, yelling, and swearing. Officer McDowell commanded Mr. Irvin to sit down and tell him what happened, which Mr. Irvin initially did, but he kept standing up to demonstrate things or point to where he had been standing when the original incident started. Describing what had happened to the officer riled Mr. Irvin up, and he started arguing with the other group again when he overheard them laughing. Mr. Irvin asked Officer McDowell if he knew what was going to happen "after this" and told the officer that the other man was "gonna get it." Mr. Irvin then crossed the street and approached the group, at which point the officers arrested him for disorderly conduct. The other man who was involved in the original altercation declined to pursue a charge of assault.

{¶4} The disorderly-conduct charge was tried to the bench. Following the presentation of the evidence, the judge found Mr. Irvin guilty because he had "recklessly cause[d] inconvenience, annoyance, or alarm to another by engaging in fighting and threatening harm to

persons or property or in violent or turbulent behavior." In particular, the judge pointed out that Mr. Irvin had repeatedly approached the other group after being separated from them, yelled extremely vulgar language and racial slurs, threatened to fight, and demonstrated other aggressive behavior for an early morning in a residential neighborhood. Mr. Irvin has appealed, assigning three errors.

## II.

## ASSIGNMENT OF ERROR I

IRVIN'S CONVICTIONS WERE SUPPORTED BY EVIDENCE WHICH WAS PRECLUDED BY THE RULES AGAINST HEARSAY AND BY IRVIN'S CONFRONTATION RIGHTS.

{¶5} In his first assignment of error, Mr. Irvin argues that the municipal court incorrectly admitted evidence over his objection. In particular, he argues that the only evidence that he had been involved in a fight before the officers arrived was a statement by a woman who appeared in Officer McDowell's body camera footage. Mr. Irvin argues that the statement by the woman, who did not testify, was inadmissible hearsay, violated his right to confrontation, and that its admission prejudiced him.

{¶6} Upon review of the record, it is not necessary to determine whether the woman's statement to the police officers was hearsay or violated Mr. Irvin's right to confrontation. Contrary to Mr. Irvin's assertion, it was not the only evidence that he had been in a fight. Officer McDowell's body camera recorded Mr. Irvin telling both the driver of the truck and Officer McDowell that the other man had assaulted him. He also told Officer McDowell that, after being assaulted, he "had to do what [he] had to do[,]" implying that he fought back. He also showed Officer McDowell blood that was on his arm from the incident. The woman's statements, therefore, were merely cumulative. "The admission of purely cumulative evidence . . . amounts

to harmless error." *State v. Carter*, 2024-Ohio-1247, ¶ 47. Moreover, the municipal court's decision was based on the behavior Mr. Irvin displayed after law enforcement arrived, not the incident that led to them being summoned. The municipal court pointed to fighting words that Mr. Irvin used in front of the officer, not to his having been involved in an earlier fight. The judge's only reference to the earlier fight was to point out that Mr. Irvin had "talk[ed] about a fight that had taken place" after the officers arrived. We, therefore, conclude that Mr. Irvin has not demonstrated reversible error. His first assignment of error is overruled.

ASSIGNMENT OF ERROR II

IRVIN'S CONVICTION IS NOT SUPPORTED BY SUFFICENT EVIDENCE.

**{¶7}** In his second assignment of error, Mr. Irvin argues that there is insufficient evidence to support his conviction. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶8}** Akron Municipal Code 132.01(A) provides in relevant part that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by . . . [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior . . . ." Mr. Irvin argues that there was no evidence presented that anyone was inconvenienced, annoyed, or alarmed by his behavior. He notes that only the officers testified and that one of the officers said that the incident

was not out of the ordinary for a police officer. Mr. Irvin also argues that any statements by other individuals in the body camera footage cannot be considered because it would violate his right to confrontation.

{¶9} "[C]reating an annoyance that cause[s] a crowd to gather provides evidence to support a finding of guilty" of disorderly conduct. *In re J.S.*, 2019-Ohio-35, ¶ 21 (5th Dist.). In addition, "[p]roof of inconvenience, annoyance or alarm may be demonstrated by the witnesses to the impact of the event on another." *Id.* We also note that,"[i]n conducting a sufficiency analysis, this Court considers all of the evidence presented at trial, even if the evidence was improperly admitted." *State v. Rust*, 2024-Ohio-5589, ¶ 20 (9th Dist.).

{¶10} The video from Officer McDowell's body camera showed that, when Mr. Irvin approached the truck in the road, the driver repeatedly told Mr. Irvin to get away from him. The footage also showed that neighbors began to come outside as the argument with the driver began and that more gathered as the incident continued. When Mr. Irvin crossed the street, one woman, who had not previously been involved in the incident, left her front porch to approach Mr. Irvin and tell him to go away. She complained to Mr. Irvin that she and her grandchildren had had to listen to Mr. Irvin argue for the last hour, that nobody wanted to hear him, and to take it somewhere else. Accordingly, we conclude the record contains sufficient evidence from which a rationale trier of fact could find that Mr. Irvin caused inconvenience, annoyance, or alarm to another.

{¶11} Mr. Irvin also argues that, even if he caused someone inconvenience, annoyance, or alarm, there was no evidence that it was related to fighting, threatening harm to persons or property, or any violent or turbulent behavior. Officer McDowell's body camera, however, captured Mr. Irvin challenging the driver of the truck or others to a fight or threatening harm to them multiple times.

{¶12}   Upon review of the record, we conclude there is sufficient evidence to support Mr. Irvin's conviction for disorderly conduct.  Mr. Irvin's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

IRVIN'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13}   In his third assignment of error, Mr. Irvin argues that his conviction was against the manifest weight of the evidence.  When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986).  "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

{¶14}   Mr. Irvin argues that, even if the record contains sufficient evidence to support his conviction, the gesticulations of individuals in the videos provided evidence of such low probative value that those individuals were inconvenienced, annoyed, or alarmed that his conviction should be reversed.  He also argues that he was in such an agitated state at the time of the incident that his comment about what would happen next could not credibly be construed as an implication that he intended to attack anyone.  Mr. Irvin further argues that he was at the receiving end of most of the shouting and notes that he repeatedly told Officer McDowell that he was the one who had been assaulted.  He, therefore, argues that the municipal court lost its way when it determined he was guilty of disorderly conduct.

{¶15} In the body camera videos, Mr. Irvin repeatedly yells, uses offensive language, and challenges another to a fight. He fails to comply with Officer McDowell's instructions and crosses the street to engage with the driver of the truck and others. A woman also tells Mr. Irvin how his yelling had disturbed her and her grandchildren for over an hour. We, therefore, cannot say that the trial court lost its way when it determined that Mr. Irvin recklessly caused inconvenience, annoyance, or alarm to another by engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior. Mr. Irvin's third assignment of error is overruled.

III.

{¶16} Mr. Irvin's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

> JENNIFER HENSAL
> FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

DEBORAH S. MATZ, Director of Law, CRAIG J. MORGAN, Chief Prosecutor, and JACQUENETTE S. CORGAN, Assistant Director of Law, for Appellee.